## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ANTHONY CHIARELLO and
CHRISTINE CHIARELLO,

                Plaintiffs,

vs.

FENBLIK, LLC, a Florida limited
liability company, and FLEETWOOD
ALUMINUM PRODUCTS, INC., a
California corporation,

                Defendants.

Civil Action No.:_____

**COMPLAINT FOR DAMAGES**

---

## COMPLAINT FOR DAMAGES

Plaintiffs, Anthony Chiarello, a resident of the State of New Hampshire, and

Christine Chiarello, a resident of the Commonwealth of Pennsylvania, by and

through undersigned counsel, hereby sue Defendants, Fenblik, LLC, a Florida

limited liability company, and Fleetwood Aluminum Products, Inc., a California

corporation and allege as follows:

## GENERAL ALLEGATIONS

## The Parties

1.     Plaintiffs, Anthony Chiarello and Christine Chiarello, are individual

residents of the states of New Hampshire and Commonwealth of Pennsylvania,

respectively (hereinafter, "Plaintiffs" or "Chiarellos").  The Chiarellos are owners of real property located in Glynn County, Georgia, which is more particularly described herein (the "Property").

2.      Defendant, Fenblik, LLC ("Fenblik"), is a limited liability company organized under the laws of the state of Florida with a primary place of business at 637 1st Avenue North, Jacksonville Beach, Florida 32250.  Defendant Fenblik is engaged in the sale and installation of purportedly high-end residential window products in Florida and Georgia.

3.      Defendant, Fleetwood Aluminum Products, Inc. d/b/a Fleetwood Windows and Doors ("Fleetwood"), is a foreign corporation, domiciled in the state of California, with its principal place of business located at 1 Fleetwood Way, Corona, California, 92879.  Defendant Fleetwood is engaged in the interstate business of manufacturing and selling purportedly high-end window and door products through, upon information and belief, an authorized dealer network. Fleetwood engages directly with end user consumers online and via the internet (email) but does not sell directly to them.

4.      Upon information and belief, Fleetwood has a network of agreements with dealers to market, sell, install, and provide warranty assistance for windows and doors manufactured by Fleetwood, including with Defendant Fenblik. Defendant Fenblik is an authorized dealer and installer of Fleetwood products for North Florida

2

and, by proximity, the Southeast Georgia region. Defendant Fenblik markets Fleetwood products via its website, which, *inter alia*, displays Fleetwood logos and product information and also provides direct links to the Fleetwood website.

5.     On or about May 24, 2021, Plaintiff Anthony Chiarello entered into a contract as more particularly described herein, with Defendant Fenblik for the purchase and installation of exterior windows and doors manufactured by Defendant Fleetwood for a custom home project on the Property (the "Contract"),. Plaintiff Anthony Chiarello would not have entered into the Contract with Defendant Fenblik but for Defendant Fenblik's relationship with Defendant Fleetwood as its authorized dealer. Plaintiff Christine Chiarello is not a party to said contract.

6.     The Contract encompasses both a Terms and Conditions of Sale executed by Defendant Fenblik and Plaintiff Anthony Chiarello, and a "Fleetwood Certified Proposal" setting forth the scope of the purchase and purporting the provide a "Lifetime TRANSFERABLE Warranty." The "Fleetwood Certified Proposal" is dual branded with both Fenblik and Fleetwood trademarks. The Contract also contains a "Governing Law" section which identifies the State and Federal courts of Duval County as the site where disputes will be heard.

7.     The total cost of the purchase and installation of Fleetwood products pursuant to the Contract was not less than $310,786.99.

**Jurisdiction and Venue**

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action between citizens of different states.

9.     This Court has both general and specific personal jurisdiction over Defendant Fenblik because: (a) Defendant Fenblik is a business entity operating, present, and/or doing business within this jurisdiction, (b) Defendant Fenblik executed the contract in this jurisdiction and the causes of action arose out of the contract, and (c) Defendant Fenblik has consented to personal jurisdiction in this Court by virtue of Section 7 in the Contract, entitled "Governing Law," which states:

> *Any disputes hereunder will be heard by the appropriate Federal and State courts located in Duval County, Florida.*

10.     This Court has specific personal jurisdiction over Defendant Fleetwood pursuant to Sections 48.193(1)(a)(1) and (2), Florida's long-arm statute, by virtue of Defendant Fleetwood operating, conducting, engaging in, or carrying on a business or business venture in this state, and committing a tortious act within this state. Plaintiffs' causes of action against Defendant Fleetwood arise out of Defendant Fleetwood's contacts with the State, including but not limited to, its agreements with Defendant Fenblik.

11.     Specifically, Defendant Fleetwood purposefully directed its activities toward Florida and has taken advantage of doing business in this forum by, *inter alia*, marketing its product through distributor/dealers who have agreed to serve as sales agent in Florida, including Defendant Fenblik; warranting products through sales and servicing agreements with dealers throughout Florida, including Defendant Fenblik; relying on its dealers, including Defendant Fenblik, to submit warranty information paperwork on behalf of end-user customers; and acting as a liaison between end-users and Defendant Fleetwood with respect to warranties.

12.     Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391, as (a) at least one Defendant resides in this District, (b) a substantial part of the event or omissions giving rise to the claim[s] occurred in this District, and (c) Defendant Fenblik has consented to venue in this District by virtue of Section 7 of the Contract entitled "Governing Law," as more fully set forth above.

<u>**Factual Allegations Applicable to All Counts**</u>

13.     Plaintiffs incorporate all preceding paragraphs as if specifically restated herein.

14.     On or about March 20, 2019, the Chiarellos purchased the Property located at 2104 Ocean Road, St. Simons Island, Georgia 31522.

15.     Thereafter, the Chiarellos engaged third parties to design and create plans and specifications for their desired custom home on the Property.

16.     Following completion of the plans and specifications, the Chiarellos retained third party contractors to construct their custom home on the Property in accordance with the plans and specifications (the "Project").

17.     One aspect of the Project called for a series of large "storefront-like" windows and doors to line the majority of the rear of both the first and second floors of the Project.[1]   Many of the "storefront-like" windows were designed to be separated at the center with I-beam mullions, which is a vertical element that forms a division between panes of a window.

18.     Given the scope of the Project and its location on coastal Georgia, the Chiarellos researched window and door manufacturers specializing in high end products, particularly the manufacture of storefront window systems designed for residential use.  it was also important to the Chiarellos that the window and door manufacturer they chose provide a warranty on its products for an extended period of time.

19.     The Chiarellos ultimately chose the Fleetwood product line for at least two critical reasons.  First, the Fleetwood website conspicuously promotes the Fleetwood transferable limited "Lifetime Warranty" in at least two places.    The

---

[1] A "storefront" window generally means any window of a commercial property that permits an unobstructed public view of the interior of the building from any immediately adjacent street, sidewalk or right of way.  Storefront systems are non-loading bearing and involve large panes of glass that combine aesthetics with energy efficiency.

"Products Warranty Page" specifies that all Hardware and Components will be "[f]ree of all defects in material and workmanship that significantly impair operation and usage." The "Products Warranty Page" further specifies that Insulated Glass will be "[f]ree of significant obstruction within the air space (e.g. chips, scratches, fingerprints, moisture, and discoloration) for ten (10) years.

20.    Second, the Fleetwood website and product brochures highlighted a "Thermal Frame Window Wall" designated as Series 3800-T, which Fleetwood describes as "an alternative to commercial storefront." According to Fleetwood, the Series 3800-T "provides the sightline benefits of storefront with all the advantages of a factory built product." The Fleetwood website explicitly compares the Series 3800-T to traditional storefront as follows:

**Warranty:**
Fleetwood products come with a Lifetime Warranty. Storefront is literally assembled on the jobsite and therefore does not have a factory warranty. Any "warranty" is provided by the installer.

**Luxury Home Design:**
The Series 3800-T was exclusively designed for luxury homes whereas storefront is designed for retail strip centers.

**Quality Control:**
Since storefront is built on the jobsite, the quality is dependent on the worker assembling the window and quality of tools available to them. Fleetwood windows are made in controlled environments with dedicated Quality Control Engineers and Managers during every step of the manufacturing process.

**More Metal:**

Storefront relies on the installer to stuff rubber into all the seams, which results in uneven sightlines and gaps.  The 3800-T comes factory glazed with unique glass stop sizes that conform to the glass of instead of needing pushed-in vinyl that will curl and bleach.

21.     Thus, Fleetwood promotes its Series 3800-T as being superior to a standard retail storefront system in that it (a) is factory assembled and *not* assembled on site, (b) is designed for luxury homes, and (c) comes with a Lifetime Warranty from the manufacturer (and not simply the installer).

22.     Relying explicitly in part on these representations, the Chiarellos determined that windows and doors manufactured by Defendant Fleetwood, specifically including but not limited to the Series 3800-T Thermal Frame Window Wall system, were the best fit for the Project.

23.     Upon identifying Fleetwood as their desired window, the Chiarellos were directed to Defendant Fenblik as the exclusive distributor for Fleetwood for Northern Florida and Southern Georgia.

24.     On or about May 24, 2021, Plaintiff Anthony Chiarello entered into the Contract with Defendant Fenblik for the purchase and installation of the exterior windows and doors for the Project.  The Contract is comprised of the "Terms and Conditions of Sale" (hereinafter "Terms and Conditions") and the "Fleetwood Certified Proposal, FENBLIK LLC, Proposal #19, DETAIL REPORT, version 3, Quote #19" (hereinafter "Fleetwood Proposal").  The Terms and Conditions and the Proposal are collectively referred to herein as the "Contract."  A true and correct

copy of the Contract is incorporated herein and attached hereto as **Exhibit A**.

25.     Upon information and belief, Defendant Fleetwood worked in tandem with Defendant Fenblik to develop pricing and product specifications for the "Fleetwood Proposal" attached to the Contract.  The "Fleetwood Proposal" is dual branded and purports to provide a "Lifetime TRANSFERABLE Warranty".

26.     Pursuant to the Contract, Defendant Fenblik was obligated to purchase the exterior windows and doors for the Project from Defendant Fleetwood and provide all construction-related services required by the Contract, including all labor, materials, equipment, and services for the installation of the exterior windows and doors specified in the Contract (hereinafter the "Work").

27.     Pursuant to Florida law and the Contract, Defendant Fenblik was required to complete the Work in accordance with industry standards, building codes, local, state, and federal laws, manufacturer's instructions, and/or the Contract.

28.     Specifically, the Contract provides in pertinent part:

> (A)6. _Warranty_.  *Seller warrants that the good sold hereunder are new and free from substantial defects in workmanship and materials and will conform in all material respects with specifications provided by the Buyer.*
> (B)8. _Standard Specifications._  *Unless otherwise agreed to in writing between Buyer and Seller, good with be produced in accordance with the manufacturer's specifications.*
> (C)   9.     _Governing Law_.  *This Contract shall be governed by the laws of the State of Florida.*

29.    Beginning in or about May 24, 2021 and ending on or about January 21, 2022, Defendant Fenblik, its employees, agents, and subcontractors performed Work under the Contract, which in pertinent part, included the ordering of more than fifty (50) high end fully assembled model series 250-T windows, model series 3900-T doors, model series 3800-T window wall units, accompanying mullions, block sill pans, and other integral window and door parts from Defendant Fleetwood (the "Product"), and the installation of the Product on the Project purportedly pursuant to the Contract.

30.    Pursuant to the Contract Terms, Defendant Fenblik invoiced the Chiarellos for the Work in three installments of $123,285.64, $109.525.16, and $77,976.19.  The third and final installment was due and payable upon "completion of installation." As of January 26, 2022, all invoices have been paid in full by the Chiarellos to Defendant Fenblick.   Upon information and belief, Defendant Fleetwood has been paid in full as well.

31.    On information and belief, Defendant Webster individually and personally directed and supervised all of the Work performed on the Property by Defendant Fenblik, its employees, agents, and subcontractors.  Upon information and belief, an agent of Defendant Fleetwood was also on site on at least one occasion in January 2022 supervising Defendant Fenblik's installation of the Product.

32.    Beginning on or about February 8, 2022, Plaintiffs discovered defects

with the quality of the Product and the quality of the Work performed under the Contract.

33.     Specifically, Plaintiffs discovered that some of the Work performed by Defendant Fenblik was not completed in accordance with industry standards, building codes, local, state, and federal laws, manufacturer's instructions, and/or the Contract.

34.     Plaintiffs further discovered defects in the Product and the Work, which included, but was (and is) not limited to, extensive and ongoing water intrusive at the fixed model series 3800-T vertical mulled windows resulting in damage to, *inter alia*, the adjacent wood framing materials.  The water intrusion was most substantial at the mullions joining two panes of model series 3800-T windows but was (and is) not limited to that location.  Upon information and belief, any remediation efforts sufficient to repair the defective window installation and flashing and resolve the water intrusion will result in subsequent damages to adjacent finishes.

35.     Defendant Fenblik was notified of the defects with the quality of the Product and the Work at least seven times beginning on February 8, 2022 and ending on May 5, 2022, with no response or attempt to remediate the defects.

36.     After the defects in the Product and the Work were discovered, the Chiarellos' General Contractor on the Project ceased construction to avoid installing flooring which could hide leaking and be damaged by water intrusion, and also to

avoid installing products, such as cabinetry, which could also be damaged by high moisture levels and the water intrusion.  Upon information and belief, little to no indoor progress has been made on the Project since at least May 5, 2022.  The original estimated completion date on the Project was May 31, 2022, with an extension through October 31, 2022, with another extension to April 30, 2023.

37.     Beginning the week of May 9, 2022, Defendant Fenblik attempted remediation efforts by applying a sealer to the exterior mull of the fixed 3800-T vertical windows.  However, upon information and belief, the mull sealants were required by Fleetwood to have been installed originally.  Defendant Fenblik's' remedial "after the fact" application of the sealants to the exterior mulls was and is substandard, resulting in reduced longevity, reduced effectiveness, and an unaesthetic appearance.

38.     Additionally, per the Contract, Fleetwood's manufacturer's guidelines, industry standards and state law, sill pans are required to be installed at the rough openings for the fixed model 3800 windows and model 3900 doors, but Defendant Fenblik failed to install sill pans.  Upon information and belief, the cost of the required sill pans was included in the Contract price, as reflected in the Fleetwood Proposal, and paid for in full by the Chiarellos.  Had Defendant Fenblik installed the required sill pans, any water intrusion occurring through the frame such as at the mullion should be captured in the sill pan and directed to drain at the exterior.  To

install the required sill pans, window assemblies will require removal and replacement. Moreover, Fleetwood's representative that visited the site should have noted the lack of sill pans and immediately addressed the deficiency.

39.    Other defects in window installation include, but are potentially not limited to, defective perimeter sealants, rough opening flashing improperly applied, and window fasters improperly installed.

40.    Additionally, Plaintiffs discovered that the model series 3800-T window system they had purchased was ***not*** factory assembled in a controlled environment, as advertised and promoted on Fleetwood's website and in product brochures. Rather, Fleetwood provided broken down 3800-T frames to Defendant Fenblik, which Defendant Fenblik thereafter assembled on site.

41.    Plaintiffs also discovered that Fleetwood failed to provide the "unique" factory glazed glass for use with the broken-down frames. Rather, Defendant Fenblik sourced the glass for the model series 3800-T locally, presumably from somewhere in Florida. The model series 3800-T window units with glass manufactured and supplied by Defendant Fenblik are uniformly foggy, hazy, and/or showing signs of significant distortion.

42.    On or about June 2022, Plaintiffs began communicating with Defendant Fleetwood regarding the defects in the Product and the Work. Plaintiff specifically asked for clarification on why the model Series 3800-T Window Wall Systems

(which is the source of most of the leaks) were assembled on site and not factory assembled. Rather than providing Plaintiffs with a full response, Defendant Fleetwood advised that it was communicating with Defendant Fenblik and its principal , Lee Webster, and had "full confidence" its authorized dealer and installer, Defendant Fenblik, would take care of the issues.

43.     Despite requests from Plaintiffs for Defendant Fleetwood to inspect the Product, supervise remediation efforts, and confirm proper installation by its authorized installer, upon information and belief, Defendant Fleetwood has not visited the Project since January 2022 and has not replaced or offered to replace any Product pursuant to the supposed "Lifetime Warranty." To be clear, Plaintiffs have contacted and requested Fleetwood to repair the deficiencies on multiple occasions. Fleetwood has not taken any steps to do so.

44.     The Defendants' remediation efforts to date have not resolved the issues with the defective Product, defective Work, and/or remedied the issues with water intrusion, high moisture levels, and distorted appearance. Damage caused by the water intrusion and high moisture levels is ongoing, potentially increasing in severity, and construction on the Project remains delayed.

45.     By certified letter dated October 3, 2022, the Chiarellos provided Defendant Fenblik with written notice of the defective Work pursuant to the Contract and Georgia and/or Florida law (hereinafter "Notice Letter"). A true and correct

copy of the Notice Letter is incorporated herein and attached hereto as **Exhibit B**.

46.    As set forth in the Notice Letter and attached thereto, the Chiarellos provided Defendant Fenblik with written notice of the Preliminary Window Evaluation dated September 22, 2022, prepared by Lougheed Resource Group, Inc. (the "Evaluation") outlining the nature of the defective Work, the location of each defect, and the resulting damage thereto.

47.    By letter dated November 4, 2022, Defendant Fenblik provided its response to the Notice Letter, disputed any liability for the defective Work, and declined to make any offer of settlement or to inspect the Project (the "Response Letter").   A true and correct copy of the Response Letter is attached hereto as **Exhibit C**.  As such, the Defendants have made clear that they do not intend to repair the deficient Product and Work and any further dialogue regarding the same would be fruitless.

48.    The Chiarellos reserve the right to amend the Notice and include new or additional installation defects that may become known in the future.

49.    All contractual and legal conditions to the filing of this suit have occurred, been satisfied, or waived.

## COUNT I – BREACH OF CONTRACT
### (Plaintiff Anthony Chiarello v. Defendant Fenblik)

50.    Anthony Chiarello hereby re-alleges and incorporates paragraphs 1-49 above as if specifically restated herein.

51.    Defendant Fenblik entered into the Contract with Anthony Chiarello by which both parties were bound to perform, and for which consideration was given.

52.    Anthony Chiarello paid Fenblik in full for all amounts due pursuant to the Contract.

53.    The Contract contains a warranty for the Work performed under the Contract providing that:

> *Seller warrants that the goods sold hereunder are new and free from defects in workmanship and materials and will conform in all material respects with specifications provided by the Buyer.  Seller's liability under the foregoing warranty is limited to the replacement of goods or refund of purchase price at Seller's sole option.*

<u>See</u> Contract, Section 5.

54.    Under the Contract, Defendant Fenblik promised to perform all work in a fit and workmanlike manner and free from defects.

55.    The Contract further provides that Defendant Fenblik will perform all work pursuant to specifications provided by the manufacturer.

> *Standard Specifications.*   *Unless otherwise agreed to in writing between Buyer and Seller, good with be produced in accordance with the manufacturer's specifications.*

<u>See</u> Contract, Section 7.

56.    Defendant Fenblik has breached its Contract with Anthony Chiarello by failing to perform the required Work in accordance with the terms of the Contract, failing to perform the Work in a manner that is free from defects, failing to perform

the Work in a workmanlike manner, failing to perform the Work such that it is fit for its intended purpose, and failing to perform work according to the manufacturer's specifications.

57.     As a direct and proximate result of Defendant Fenblik's breach of the Contract, Anthony Chiarello has suffered damages in an amount to be proven at trial, including but not limited to, the cost of inspecting, testing, and repairing the defective Work performed under the Contract.

64.     WHEREFORE, Plaintiff Anthony Chiarello respectfully requests judgment in his favor and against Defendant Fenblik for damages, together with pre-judgment interest, costs, and all such other relief as this Court deems appropriate.  .

## COUNT II – BREACH OF EXPRESS WARRANTY
### (Plaintiff Anthony Chiarello v. Defendant Fenblik)

58.     Plaintiff Anthony Chiarello hereby re-alleges and incorporates paragraphs 1-49 above as if specifically restated herein.

59.     Defendant Fenblik entered into the Contract with Anthony Chiarello by which both parties were bound to perform, and for which consideration was given.

60.     Under the Contract, Defendant Fenblik warranted that all work would be completed in conformance with the project specifications and in accordance with manufacturer's specifications.

61.     Defendant Fenblik Construction further warranted that it would promptly correct and replace any defective Work or refund the purchase price to

Anthony Chiarello.

62.     Defendant Fenblik has breached its Contract with Anthony Chiarello by failing to perform the required Work in accordance with the terms of the Contract, failing to perform the Work in a manner that is free from defects, failing to perform the Work in a workmanlike manner, failing to perform the Work such that it is fit for its intended purpose, and failing to correct and bear the costs to repair the defective Work and/or refund the purchase price.

63.     As a direct and proximate cause of Defendant Fenblik's breach of these warranties, Plaintiff Anthony Chiarello has suffered damages in an amount proven at trial.

WHEREFORE, Plaintiff Anthony Chiarello respectfully requests judgment in his favor and against Defendant Fenblik for damages, together with pre-judgment interest, costs, and all such other relief as this Court deems appropriate.

## COUNT III – BREACH OF IMPLIED WARRANTY
### (Plaintiff Anthony Chiarello v. Defendant Fenblik)

64.     Plaintiff Anthony Chiarello hereby re-alleges and incorporates paragraphs 1-49 above as if specifically restated herein.

65.     Defendant Fenblik entered into the Contract with Anthony Chiarello by which both parties were bound to perform, and for which consideration was given.

66.      Pursuant to the Contract and Florida law, Defendant Fenblik warranted at law that: (1) the Work would be performed skillfully, carefully, diligently, and in

a workmanlike manner according to plan, and (2) that in performing the Work, Defendant Fenblik Construction would exercise a reasonable degree of care, skill, and ability, which is generally taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by others of the same profession.

67.    Defendant Fenblik breached its implied warranties by failing to perform the Work skillfully, carefully, diligently, and in a workmanlike manner according to plan, failing to exercise a reasonable degree of care, skill, and ability, which is generally taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by others of the same profession, failing to perform the Work in a manner that is free from defects, and failing to perform the Work such that it is fit for its intended purpose.

68.    As a direct and proximate cause of Defendant Fenblik's breach of its warranties to Anthony Chiarello, Anthony Chiarello has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff Anthony Chiarello respectfully requests judgment in his favor and against Defendant Fenblik for damages, together with pre-judgment interest, costs, and all such other relief as this Court deems appropriate.

## COUNT IV – NEGLIGENCE
### (Plaintiffs v. Defendant Fenblik)

69.     Plaintiffs hereby re-allege and incorporate paragraphs 1-49 above as if specifically restated herein.

70.      Defendant Fenblik owed the Chiarellos a duty to perform the Work in accordance with industry standards, the manufacturer's specifications and state and local laws and codes.

71.     Defendant Fenblik owed the Chiarellos a duty to perform the Work skillfully, carefully, diligently and in a workmanlike manner.

72.      Defendant Fenblik owed the Chiarellos a duty to exercise a reasonable degree of care, skill, and ability which is generally taken and considered to be such a degree of care and skill as ordinarily employed by others of the same profession under similar conditions and like circumstances.  To the extent that any non-Fenblik laborers were utilized in its construction process, Defendant Fenblik owed the Chiarellos a duty to supervise the Work skillfully, carefully, diligently, and in a workmanlike manner.

73.     Defendant Fenblik breached their duties to Plaintiffs by, *inter alia*, failing to perform the Work in an fit and workmanlike manner, failing to perform the Work in accordance with all applicable laws and industry standards, failing to perform the Work with the same degree and skill ordinarily employed by others of the same profession under similar conditions, and in a manner that is free from all

defects, and failing to supervise the Work carefully, diligently, and in a workmanlike manner.

74.     As a direct and proximate cause of Defendant Fenblik's breach, the Chiarellos have suffered damages in that the water intrusion, excessive moisture, and anticipated necessary remediation stemming from the defective window and door installation have caused, are causing, or will cause (a) damage to the adjacent finishes and interior of the Project, (b) delayed construction on the Project resulting in escalating construction and financing costs, loss of expected habitability and extended rental and travel costs, and (c) other damages in amounts to be established at trial.

75.     Accordingly, the Chiarellos are entitled to recover actual and compensatory damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendant Fenblik for damages, together with pre-judgment interest, costs, and all such other relief as this Court deems appropriate.

## COUNT V – BREACH OF EXPRESS WARRANTY
### (Plaintiff Anthony Chiarello v. Defendant Fleetwood)

76.     Plaintiff Anthony Chiarello hereby re-alleges and incorporates paragraphs 1-49 above as if specifically restated herein.

77.     Anthony Chiarello entered into a Contract to purchase windows, doors and accompanying hardware, including but not limited to mullions, that Defendant

Fleetwood manufactured from Fenblik, an authorized Fleetwood distributor and installer.

78.   Pursuant to the Contract and its website and marketing materials, Defendant Fleetwood provides a Transferable Lifetime Warranty on its Product. The Lifetime Warranty includes, but is not limited to, the covenant that Product hardware and components will be "free of all defects in material and workmanship that significantly impair operation and usage."

79.   Defendant Fleetwood has breached its Express Warranty with Anthony Chiarello by, *inter alia*, failing to provide Product that is free from defects and workmanship that significantly impairs operation and usage.  Specifically, the Series 3900 doors and Series 3800-T Windows leak, most notably at the mullions, which is also Product manufactured by Defendant Fleetwood.

80.   Anthony Chiarello contacted Fleetwood to request that Fleetwood address the failures in the windows and Fleetwood failed to take any steps to do so.

81.   As a direct and proximate cause of Defendant Fleetwood's breach of these warranties, Anthony Chiarello has suffered damages in an amount proven at trial.

WHEREFORE, Plaintiff Anthony Chiarello respectfully requests judgment in his favor and against Defendant Fleetwood for damages, together with pre-judgment interest, costs, and all such other relief as this Court deems appropriate.

## COUNT VI – BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### (Plaintiff Anthony Chiarello v. Defendant Fleetwood)

82.     Plaintiff Anthony Chiarello hereby re-alleges and incorporates paragraphs 1-49 above as if specifically restated herein.

83.     Anthony Chiarello entered into a Contract to purchase windows, doors and accompanying hardware, including but not limited to mullions, manufactured by Defendant Fleetwood.

84.     Pursuant to the Contract and Florida law, Defendant Fleetwood implicitly warranted that the Product is (at minimum) of average quality and that it is fit for the ordinary purposes for which goods are used.

85.     Defendant Fleetwood breached its implied warranties by failing to provide Product of average quality fit for their intended purpose, which is to, *inter alia*, keep water and other elements outside.  Specifically, the doors, windows, and mullions provided by Defendant Fleetwood leak.

86.     As a direct and proximate cause of Defendant Fleetwood's breach of its implied warranties to Anthony Chiarello, Anthony Chiarello has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff Anthony Chiarello respectfully requests judgment in his favor and against Defendant Fleetwood for damages, together with pre-judgment interest, costs, and all such other relief as this Court deems appropriate.

## <u>COUNT VII –BREACH OF IMPLIED WARRANTY OF FITNESS</u>
### (Plaintiff Anthony Chiarello v. Defendant Fleetwood)

87.    Plaintiff Anthony Chiarello hereby re-alleges and incorporates paragraphs 1-49 above as if specifically restated herein.

88.    Anthony Chiarello entered into a Contract to purchase windows, doors and accompanying hardware, including but not limited to mullions, manufactured by Defendant Fleetwood.

89.    Pursuant to the Contract and Florida law, Defendant Fleetwood implicitly warranted that the Product is suitable for a particular purpose, which includes, but is not limited to, the covenant that Fleetwood windows and doors are suitable for luxury homes and watertight.

90.    Defendant Fleetwood breached its implied warranties by failing to provide Product fit for a particular purpose of watertight use in a luxury home. Specifically, the doors, windows, and mullions manufactured by Defendant Fleetwood for use in the Project leak.

91.    As a direct and proximate cause of Defendant Fleetwood's breach of its implied warranties to Anthony Chiarello, Anthony Chiarello has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff Anthony Chiarello respectfully requests judgment in his favor and against Defendant Fleetwood for damages, together with pre-judgment interest, costs, and all such other relief as this Court deems appropriate.

## COUNT VIII–VIOLATION OF FLORIDA
## DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA)
### (Plaintiffs v. All Defendants)

92.     Plaintiffs hereby re-allege and incorporate paragraphs 1-49 above as if specifically restated herein.

93.     This is an action under Section 501.204 of Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Chapter 501, Part II, Florida Statutes, which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

94.     Plaintiffs are each a "consumer" and/or a "person" as defined under FDUTPA.

95.     Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

96.     Defendants, acting in concert and individually, engaged in a deceptive scheme to deceive consumers, specifically, Plaintiffs, into believing that the window products manufactured by Defendant Fleetwood referred to as the model series 3800-T Window Wall System was materially distinct from a standard "store-front" retail product.

97.     As described above, Defendant Fleetwood and Defendant Fenblik's (by virtue in part of its direct link to Defendant Fleetwood's site) websites, specifically distinguish between the model series 3800-T and traditional "storefront" in the

following ways:

1) Model series 3800-T comes with a Lifetime Warranty.  *In contrast*, storefront is assembled on the jobsite and therefore does not have a factory warranty.
2) Fleetwood windows are made in controlled environments with dedicated quality Quality Control Engineers and Managers during every step of the manufacturing process.  *In contrast*, storefront is built on the jobsite.
3) The Series 3800-T comes factory glazed with unique glass stop sizes that conform to the glass.  *In contrast*, storefront relies on the installer to stuff rubber into the seams, which results in uneven sightlines and gaps.

98.   In fact, nothing promoted on the websites of Defendants Fleetwood and Fenblik was truthful regarding the model series 3800-T Window Wall System ordered by Plaintiff for the Project.  Specifically, the frames were delivered broken down and field assembled (apparently poorly) by Defendant Fenblik, and the glass was locally sourced by Defendant Fenblik.  None of the Defendants is currently honoring a warranty on the Product, much less a "lifetime" one.

99.   Defendants' representations as set forth above are false and misleading and Plaintiffs were actually misled into believing they were ordering one product, when something else entirely was delivered and assembled for use on their Project in violation of Section 501.204 of FDUTPA.

100.   As described above, Defendants have engaged in deceptive and unfair acts and practices likely to deceive a consumer acting reasonably in violation of the provisions of Chapter 501, Part II of the Florida Statutes.

26

101.   As a result of Defendants' unfair and deceptive trade practices, Defendants have caused actual damages to Plaintiffs.

102.   Florida Statutes Sections 501.207, 501.2075, and 501.2077 authorize this Court to grant such relief as this Court finds necessary to redress injury to Plaintiffs resulting from Defendants' violation of FDUTPA, including injunctive relief, the refund of monies paid, the disgorgement of ill-gotten monies, and civil penalties.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendants for damages, together with pre-judgment interest, costs, attorneys' fees and all such other relief as this Court deems appropriate.

Respectfully submitted this 17th day of January, 2023.

**FERRELLE BURNS, P.A.**

*/s/ David D. Burns            /*
David Burns
Florida Bar No. 878081
dburns@ferrelleburns.com
Kathleen Wubker
Florida Bar No. 544213
kwubker@ferrelleburns.com
241 Atlantic Boulevard, Suite 203
Neptune Beach, Florida 32266
Office: 904-372-4177
Facsimile: 904-853-6984

**Attorneys for Plaintiffs**